United States District Court
Southern District of Texas
**ENTERED**
September 08, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ERVIN EMANUEL, | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:23-CV-04714 |
| | § | |
| BILL NELSON, *et al.*, | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant's Opposed Motion for Summary Judgment (Dkt. 34). After careful consideration of the briefing, the record, and the applicable law, the Court **GRANTS** the Motion (Dkt. 34) and **DISMISSES** the case.

## I. FACTUAL BACKGROUND

Plaintiff Ervin Emanuel ("Emanuel") was employed by Defendant National Aeronautics and Space Administration ("NASA") until his retirement in 2023. (Dkt. 42 at p. 9). In 2019, NASA reorganized their Engineering Directorate, abolishing and creating various offices and positions. (Dkt. 34 at p. 13). Emanuel served as a Chief Engineer and was realigned to a different, newly created role after the reorganization. (Dkt. 42 at p. 10). In this new role, Emanuel's unclassified responsibilities included providing his supervisor with weekly reports ("WARs") and completing a Road Show presentation, among others. (Dkt. 34 at pp. 13 – 14).

Additionally, Emanuel's position "required him to work with or around top-secret and classified information 100% of the time." (Dkt. 42 at p. 12). Emanuel could only complete classified work at NASA in person at the Sensitive Compartmented Information Facility ("SCIF") and other NASA areas cleared for classified work. (Dkt. 34 at p. 14). Put simply, Emanuel could not complete classified work at home. *Id*.

As a result of the COVID-19 pandemic, Emanuel began teleworking. *Id*. For the next two years, Emanuel "had a litany of work failures." *Id*. Emanuel clashed with his supervisors, refusing to report on his work because it was "classified." *Id*. Thereafter, Emanuel's supervisors reported him to the Office of Inspector General to investigate whether he was committing a federal crime by completing confidential work at home. (*Id*. at p. 15). Investigators confiscated Emanuel's work computer and interviewed his supervisors. *Id.* No classified information was found on Emanuel's laptop. (Dkt. 42 at p. 14). Still, a review of Emanuel's timesheets demonstrated that he logged only 89.5 hours of work in the SCIF during a period consisting of 2,480 possible work hours. (Dkt. 34 at p. 15). As NASA asserts, "the overwhelming evidence shows that [Emanuel] was not working on a classified project." (Dkt. 34 at p. 16).

After the investigation, Emanuel continued to fail to provide work product—including WARs or updates to his Road Show presentation. (*Id*. at p. 17). NASA eventually placed Emauel on an Opportunity to Demonstrate Acceptable Performance plan ("ODAP"), giving him "thirty days to improve regarding two critical elements in his position." *Id*. "Though Emanuel was told he would be placed on an ODAP on November

16, 2021, he was not placed on an ODAP until May 2022." (Dkt. 42 at p. 13). Under ODAP, Emanuel was expected to complete 10 actions as clearly listed in the plan. (Dkt. 34 at p. 18). NASA ultimately determined that Emanuel failed to satisfy the ODAP and notified him of his proposed removal on June 7, 2022. *Id*. Before he could be removed, Emanuel retired. *Id*.

Emanuel initially contacted NASA's Equal Employment Opportunity ("EEO") Counselor on November 17, 2021—exactly one day after being notified that he would be placed on an ODAP. (Dkt. 42-29 at p. 4). His complaint was filed in March of 2022 after a final interview with the EEO Counselor. *Id*. In his complaint, Emanuel alleged race, color, sex, and age discrimination, as well as reprisal. (*Id*. at p. 2).

Specifically, Emanuel alleged that the individuals serving as Division Chief and Deputy Division Chief after the reorganization "still have an on-going ax to grind on [his] behalf and cherishes the opportunity to retaliate." (Dkt. 42-29 at p. 5). Emanuel seems to be referencing a 2015 EEOC hearing during which the EEOC ruled in favor of Emanuel on his race discrimination and retaliation claims. (Dkt. 42 at p. 9). According to this ruling, NASA "was required to promote [Emanuel]…, pay economic and compensatory damages[,] and [pay] attorney's fees." *Id*. The individual serving as Division Chief after the 2019 reorganization was named in the 2015 complaint "as the ringleader of the race discrimination and retaliation that Emanuel experienced." *Id*. Emanuel alleges in his EEO complaint that he has been "unfairly put back in an environment that is conducive to these types of management behavior." (Dkt. 42-29 at p. 5). Emanuel also alleges in the complaint

that his direct supervisor, after the reorganization, "continues to demand that [Emanuel] provide more details of [his] work" in WARs. *Id*. Emanuel asserts: "He treats me like a fresh out intern, not like a 34-year subject matter expert in 5 different disciplines. I believe I am being single[d] out and treated differently from anyone else and thus retaliated against because of my former EEOC complaint." *Id*.

Later, in April of 2023, Emanuel attempted to amend this EEO complaint to include a constructive discharge claim. (Dkt. 34-2 at p. 2). This motion was denied as untimely. *Id*. The following July, Emanuel filed another complaint alleging constructive discharge—which was also dismissed as untimely. *Id*. In September of 2023, the EEO dismissed all of Emanuel's claims. *See* (Dkt. 34-4).

Emanuel now brings claims against NASA for discrimination based on race, age, and gender, along with retaliation and hostile work environment claims, in violation of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act. *See* (Dkt. 5). Emanuel alleged the following at his deposition as to each claim:

**RACE AND AGE DISCRIMINATION:**

1. Plaintiff was given an ODAP performance evaluation. Ex. A at 50:12-13.[1]
2. Defendant requested to monitor Plaintiff's computer Ex. A at 51:14-17.
3. Defendant accused Plaintiff of violating security policy. Ex. A at 51:23-24.
4. Defendant confiscating Plaintiff's work computer. Ex. A at 51:25-52:1.
5. Plaintiff received a midterm evaluation. Ex. A at 52:2-3.
6. Plaintiff received an allegedly unwarranted reprimand for leave. Ex. A at 52:16-18.
7. Plaintiff was allegedly excused from meetings without justification. Ex. A at 52:23-25.

8. Plaintiff was allegedly told he was on an ODAP when he was not in fact on an ODAP. Ex. A at 53:2-5.[2]
9. Plaintiff was allegedly not invited to local JSC security status meetings. Ex. A at 53:8-11.
10. Plaintiff received a notice of removal. Ex. A at 53:15-17.
11. Plaintiff alleges that he was denied access to the portal in the skiff. Ex. A at 53:20-22.
12. Plaintiff alleges that he was asked to violate national security policies when providing weekly reports. Ex. A at 53:25-54:4.
13. Plaintiff's security clearance was suspended for allegedly untrue allegations. Ex. A at 54:9-12.
14. Plaintiff was not allowed to take his computer home during his ODAP. Ex. A at 54:14-17.
15. Plaintiff alleges that he was constructively discharged. Ex. A at 54:9-25.
16. Plaintiff allegedly received consistent negative comments concerning the quality of Plaintiff's work. Ex. A at 55:2-12.
17. Plaintiff alleges that he was barred from meetings regarding security even though he was the chief engineer. Ex. A at 55:14-21.
18. Plaintiff alleges that he was deceived during the reorganization to believe that he would report to someone with a security clearance. Ex. A at 57:4-9.
19. Plaintiff was placed in a branch when he thought he was going to be at the directorate level. Ex. A at 57:12-58:1.
20. That the Defendant had a reorganization. Ex. A at 59:2-5.[3]
21. Defendant allegedly refused to move Plaintiff to an organization where someone would have proper security clearance. Ex. A at 59:2-10.
22. Defendant allegedly put Plaintiff in an environment with limited supervision. Ex. A at 59:15-19.
23. Plaintiff alleges that people of similar job requirements were treated differently than him. Ex. A at 62:23-25.
24. Plaintiff alleges that his timesheets were pulled to see if he was working. Ex. A at 63:21-24.
25. Plaintiff alleges that he received a request to retire after Alternative Dispute Resolution and an offer of $10,000.00 to retire. Ex. A at 64:1-5.
26. Plaintiff alleges that he received evidence of a statement that suggested that he should be removed. Ex. A at 64:16-23.
27. Plaintiff alleges that he was pressured to retire. Ex. A at 65:3-7.

**RETALIATION:**

1. Plaintiff was allegedly not allowed to compete for the position at the EA4 manager, technical integration office. Ex. A at 73:18-25.

2. A reorganization occurred, allegedly to specifically to preclude Plaintiff from competing for the EA4 manager, technical integration position. Ex. A at 74:5-11.[4]
3. Plaintiff was allegedly supervised by Pat Pilola. Ex. A at 75:16-19.
4. Plaintiff received an allegedly unwarranted reprimand. Ex. A at 75:22-25.
5. Plaintiff alleges that he was the only chief engineer put in a branch that was previously at a directorate level. Ex. A at 76:8-12.
6. Plaintiff alleges all the acts of discrimination (1-27) were also retaliation. Ex. A at 76:16-77:6.
7. When Debbie Buscher became Plaintiff's boss. Ex. A at 77:14-20.
8. Plaintiff alleges that he was replaced with Steve Schenfield in his deputy manager for technical integration position. Ex. A at 78:7-11.
9. Plaintiff alleges that Jim McMichael made untrue statements about his performance. Ex. A at 78:20-22.
10. Plaintiff alleges that he was accused of not working and stealing time. Ex. A at 79:9-11, 23-25.
11. Plaintiff alleges that it took six (6) months to draft the ODAP. Ex. A at 80:16-19.
12. Plaintiff alleges that he was on an unofficial ODAP for five (5) months. Ex. A at 80:24-81:1.
13. Plaintiff alleges that he did not receive a performance assessment for 2022. Ex. A at 81:3-6.
14. Plaintiff alleges that his ODAP requirements were not representative of his position. Ex. A at 83:10-13.
15. Plaintiff alleges that the request for justification of the ODAP remained unanswered. Ex. A at 83:17-19.
16. Plaintiff believes he should not have been evaluated for failure at the midterm, but rather at the end of the year evaluation. Ex. A at 84:4-7.
17. The ODAP required that Plaintiff provide unclassified information when the position was allegedly entirely classified. Ex. A at 84:16-19.
18. Plaintiff alleges that he was asked for detailed summaries on his weekly reports instead of bullet points. Ex. A at 85:3-5.[5]
19. Plaintiff alleges that all his activities were strictly scrutinized. Ex. A at 85:8-10.

HOSTILE WORK ENVIRONMENT:

1. Plaintiff alleges that he experienced microaggressions. Ex. A at 86:2-5.
2. Plaintiff alleges that he was reprimanded like a criminal. Ex. A at 86:8-13.
3. Plaintiff alleges that he was removed from site like a criminal. Ex. A at 86:14-16.
4. Plaintiff alleges that Defendant took his badge. Ex. A at 86:17-19.[6]
5. Plaintiff alleges that Defendant requested that the police be secretly available during Plaintiff's removal. Ex. A at 86:20-25.
6. Plaintiff alleges that Defendant devalued his work for no justifiable reason. Ex. A at 87:2-5.
7. Plaintiff alleges that Defendant did not evaluate Plaintiff's performance with input from stakeholders at NASA headquarters.
8. Plaintiff alleges that evaluators were not trained in cyber security, making determinations about whether Plaintiff violated cyber security policies. Ex. A at 88:13-19.
9. Plaintiff alleges that Defendant did not allow Plaintiff to use administrative assistants to assist in preparing presentations. Ex. A at 88:25-89:7.
10. Plaintiff alleges that he received hostile emails from Jim McMichael. Ex. A at 89:16-18.
11. Plaintiff alleges that Jim McMichael and Debbie Buscher had a conversation about Plaintiff. Ex. A at 90:7-11.
12. Plaintiff alleges that McMichael and Buscher made degrading remarks during Plaintiff's roadshow. Ex. A at 90:13-17.
13. Plaintiff alleges that it took three months for Jay Leggett to schedule a requested meeting with Julie. Ex. A at 90:20-24.
14. Plaintiff alleges that engineering director Julie White would not transfer Plaintiff to another directorate that had the same job function. Ex. A at 91:1-6.
15. Plaintiff alleges that they covered up wrong doings by Pat Pilola. Ex. A at 91:10-14.
16. Plaintiff alleges that Buscher consulted with her brother who, works for the Department of Defense general questions about Plaintiff. Ex. A at 91:17-21.

(Dkt. 34 at pp. 20 – 23).

NASA argues that all of Emanuel's claims are appropriate for dismissal under this motion, while Emanuel argues that he has created a genuine issue of material fact as to each of his claims. *See* (Dkts. 34, 42, 44). The Court addresses each argument below.

## II. APPLICABLE LAW

### A. Federal Rule of Civil Procedure 56

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is material if it might affect the outcome of the suit, and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Miranda v. Navistar, Inc.*, 23 F.4th 500, 503 (5th Cir. 2022). To survive summary judgment, the nonmovant must "present competent summary judgment evidence to support the essential elements of its claim." *Cephus v. Tex. Health & Hum. Servs. Comm'n*, 146 F. Supp. 3d 818, 826 (S.D. Tex. 2015).

The nonmovant's "burden will not be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quotation omitted). Rather, the "nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim." *Brooks v. Houston Indep. Sch. Dist.*, 86 F. Supp. 3d 577, 584 (S.D. Tex. 2015). In ruling on a motion for summary judgment, the Court must construe "the evidence in the light most favorable to the

nonmoving party and draw all reasonable inferences in that party's favor." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020).

**B. The Age Discrimination in Employment Act**

The Age Discrimination in Employment Act ("ADEA") makes it "unlawful for an employer … to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "Claims brought under the ADEA often involve circumstantial evidence and are evaluated using *McDonnell Douglas* burden-shifting." *Harris v. City of Schertz*, 27 F.4th 1120, 1123 (5th Cir. 2022) (citing *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015)); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

**C. Title VII of the Civil Rights Act of 1964**

Title VII of the Civil Rights Act of 1964 ("Title VII") prohibits "discharg[ing] any individual, or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). A plaintiff can prove intentional discrimination under Title VII through either direct or circumstantial evidence. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007). Direct evidence is evidence which, if believed, proves the fact without inference or presumption. *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005) (citing *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993)). When discrimination claims

are based on circumstantial evidence, courts apply the *McDonnell Douglas* burden-shifting framework. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (citing *McDonnell Douglas*, 411 U.S. at 802.

## III. ANALYSIS

While Emanuel is barred from bringing his constructive discharge claim, the Court considers all of Emanuel's remaining allegations for purposes of this motion. The Court finds that no genuine issue exists as to Emanuel's race and age discrimination claims because he cannot carry his burden to demonstrate pretext. The Court also finds that no genuine issue exists as to Emanuel's retaliation claim because he did not create a fact issue as to causation. Finally, the Court finds that Emanuel did not create a fact issue as to his hostile work environment claims. Accordingly, the Court must grant the motion and dismiss the claims.

### A. Failure to Exhaust

Under Title VII, "[b]efore suing, a plaintiff must exhaust administrative remedies by filing a charge with the EEOC." *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 337 (5th Cir. 2021). "To satisfy exhaustion, a claim generally must arise out of the plaintiff's EEOC charge." *Id*. For these purposes, the Fifth Circuit "construe[s] the EEOC charge in its broadest reasonable sense." *Davenport v. Edward D. Jones & Co., L.P.*, 891 F.3d 162, 167 (5th Cir. 2018). Emanuel's claims can only include "those allegations that are 'like or related to those allegations contained in the EEOC charge and growing out of such allegations during the pendency of the case before the Commission.'" *Id.* (quoting *Sanchez*

*v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)) (cleaned up). The same requirements apply to claims under the ADEA. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).

*i. Constructive Discharge*

Emanuel attempts to bring a claim for constructive discharge against NASA under Title VII and the ADEA. (Dkt. 42 at pp. 17 – 21). However, an EEO administrative judge denied his motion to bring this claim before the EEO as untimely. (Dkt. 34-2 at pp. 1 – 3). "Failure to notify the EEO counselor in timely fashion," as done by Emanuel, "may bar a claim, absent a defense of waiver, estoppel, or equitable tolling." *Pacheco v. Rice*, 966 F.2d 904, 905 (5th Cir. 1992) (citing *Henderson v. United States Veterans Admin.*, 790 F.2d 436, 439 (5th Cir. 1986)). Finding that Emanuel has failed to sufficiently justify his delay, the Court holds that his constructive discharge claim must be dismissed for failure to exhaust.

*ii. Discrimination and Retaliation*

Emanuel must have exhausted his administrative remedies by filing a charge of discrimination with NASA's EEO office. 42 U.S.C. § 2000e-5(e)(1). If Emanuel's claims can reasonably be expected to grow out of his prior EEO charges of discrimination, he satisfies his burden to exhaust his administrative remedies. *Pacheco*, 488 F.3d at 788. NASA argues that Emanuel only properly exhausted 6 of his approximately 62 allegations of discrimination, retaliation, and hostile work environment. (Dkt. 34 at pp. 20 – 23). The Court disagrees.

Emanuel's complaint of discrimination with NASA's EEO office provides a thorough breakdown of his race, color, age, sex,[1] and reprisal discrimination claims. (Dkt. 42-29). Though NASA is correct that most of Emanuel's allegations are not specifically included in the EEO complaint, the Court finds that these allegations are sufficiently related to those in the complaint. *See* (Dkt. 34 at pp. 20 – 23); (Dkt. 42-29 at pp. 5 – 6). Accordingly, Emanuel's allegations of discrimination and retaliation are considered in the Court's analysis of his claims to the extent that they are timely and appropriate.

**B. Race and Age Discrimination Claims**

The Court finds that no genuine issue exists as to Emanuel's race and age discrimination claims. Because Emanuel does not offer direct evidence of discrimination, he must proceed under the *McDonnell Douglas* burden-shifting framework. *See Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 n.2 (5th Cir. 2002) ("This circuit applies the *McDonnell Douglas* rubric to both Title VII and ADEA claims."). Under the *McDonnell Douglas* approach, the plaintiff has the initial burden of making a *prima facie* showing of discrimination. *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005); *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). For the purposes of this motion, the Court assumes without finding that Emanuel is able to present a *prima facie* case of discrimination.

*i. Legitimate Non-Discriminatory Reason*

[1] The Court notes that Emanuel has withdrawn his sex discrimination claim. (Dkt. 34 at p. 27).

Where the plaintiff is successful in presenting a *prima facie* case of discrimination, the burden of production shifts to the employer to "rebut a presumption of discrimination by articulating a legitimate, nondiscriminatory reason for the adverse employment action." *Turner*, 476 F.3d at 345 (citing *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 402 (5th Cir. 2001)). "If defendant meets that burden, 'the presumption of discrimination created by the plaintiff's *prima facie* case disappears and the plaintiff must meet [their] ultimate burden of persuasion on the issue of intentional discrimination.'" *Lay v. Singing River Health Sys.*, 694 F. App'x 248, 253 (5th Cir. 2017) (quoting *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005)).

Assuming arguendo that Emanuel is able to demonstrate a *prima facie* case of discrimination under Title VII and the ADEA, NASA bears the burden of production to demonstrate a legitimate non-discriminatory reason for its actions towards Emanuel. "The defendant may meet this burden by presenting evidence that 'if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action.'" *Nichols v. Loral Vought Systems Corp.*, 81 F.3d 38, 41 (5th Cir. 1996) (quoting *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 992 (5th Cir. 1996)). The defendant's burden is one of production, not proof, and involves no credibility assessments. *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 385 (5th Cir. 2003). This "burden requires the production of admissible evidence in support of its nondiscriminatory reasons." *Hervey v. Miss. Dep't of Educ.*, 404 Fed. App'x. 865, 868 (5th Cir. 2010) (per curiam). "If the employer produces any evidence, which, taken as true, would permit the conclusion that there was a

nondiscriminatory reason for the adverse action, then the employer has satisfied its burden of production." *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995) (quotation omitted).

NASA has proffered sufficient evidence to carry its burden to demonstrate a legitimate non-discriminatory reason for its actions towards Emanuel. Specifically, NASA has produced admissible evidence that Emanuel was underperforming in his job since 2020 by failing to timely complete his Road Show performance, failing to actively participate in meetings, being unavailable during work hours, failing to provide adequate weekly reports, refusing to disclose his work, missing meetings with management, and—importantly—failing to satisfy the ODAP. (Dkt. 34 at pp. 14 – 17). By proffering evidence of Emanuel's failures at work, NASA has met its burden to demonstrate a legitimate non-discriminatory reason for its action towards Emanuel.

*ii.* *Evidence of Pretext*

NASA has provided sufficient evidence to show it predicated its actions on a legitimate non-discriminatory reason—now, Emanuel can only avoid summary judgment by "adduc[ing] evidence that [NASA's] proffered reason" for its actions "was merely a pretext" for discrimination. *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 685 (5th Cir. 2001). "This burden now merges with the ultimate burden of persuading the court that [Emanuel] has been the victim of intentional discrimination. [Emanuel] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy

of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S. Ct. 1089, 1095 (1981). The Court finds that Emanuel fails to do either.

Emanuel argues that NASA's "reasons have shifted over time," demonstrating pretext. (Dkt. 42 at p. 29). However, the only evidence that Emanuel cites to support this argument is an affidavit outlining why NASA put Emanuel on an ODAP, recommended him for removal, placed him on administrative leave, and took his badge. (*Id*. at p. 30). The Court finds nothing in this affidavit that contradicts NASA's previously or currently proffered reasons for its actions towards Emanuel. Ultimately, the affidavit reinforces NASA's position: that "[Emanuel] was placed on an ODAP because his performance was unacceptable" during 2021 and 2022. *Id*. Emanuel does not provide any further evidence to support its argument that NASA's legitimate non-discriminatory reason its actions towards Emanuel is pretextual.

The Court finds that Emanuel fails to create a genuine issue as to whether NASA's legitimate non-discriminatory reason for its actions towards him is pretextual. Accordingly, Emanuel's discrimination claims under Title VII and the ADEA fail.

**C. Retaliation**

The Court finds that no genuine issue exists as to Emanuel's retaliation claim. Courts apply consistent elemental, evidentiary, and burden-shifting frameworks to retaliation claims under the ADEA and Title VII. *See Norsworthy v. Hous. Indep. Sch. Dist.*, 70 F.4th 332, 336 (5th Cir. 2023) (applying the same framework to retaliation claims under the ADEA and Title VII); *see also Ray v. Iuka Special Mun. Separate Sch. Dist.*, 51

F.3d 1246, 1249 (5th Cir. 1995) (same). A plaintiff can make a *prima facie* retaliation claim by showing: (1) engagement in a protected activity; (2) an adverse employment action; and (3) a causal connection between the two. *See January v. City of Huntsville*, 74 F.4th 646, 653 (5th Cir. 2023). The Court finds that Emanuel is unable to create a genuine issue as to the causation element.

"At the *prima facie* case, a plaintiff can meet his burden of causation simply by showing close enough timing between his protected activity and his adverse employment action." *Garcia v. Prof'l Contract Servs.*, 938 F.3d 236, 243 (5th Cir. 2019). However, "[t]he protected act and the adverse employment action must be very close in time to establish causation by timing alone." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 948 (5th Cir. 2015) (quotation marks, citation, and alterations omitted). The Fifth Circuit has found that a period of two-and-a-half months, a period of two months, and a period of six-and-a-half weeks are "close enough to show a causal connection." *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 578 (5th Cir. 2020).

Here, Emanuel argues that he was retaliated against for his November 17, 2021, initial complaint with the EEO Counselor. (Dkt. 42 at p. 34). The earliest allegedly retaliatory action that Emanuel proffers is NASA's revocation of his security clearance.[2]

[2] Emanuel also writes: "On PDF pages 20-23, [NASA] lists a voluminous number of claims Emanuel can use to support his retaliation claim causal connection." (Dkt. 42 at p. 34). There is no citation. *See id*. The Court assumes that Emanuel is referring to NASA's motion. *See* (Dkt. 34 at pp. 21 – 22). However, NASA did not include the dates of the alleged retaliatory actions—nor did it need to in its briefing. Accordingly, the Court follows Emanuel and looks to the stripping of his security clearance as the first alleged retaliatory action after the initial complaint. *See* (Dkt. 42

(Dkt. 42 at p. 34). Emanuel was issued a memo revoking his security clearance on April 5, 2022—over 19 weeks after the initial complaint. (Dkt. 42-23 at p. 2). This temporal evidence (that Emanuel did not cite to in his brief) is the only evidence he proffers in support of the causation element of his retaliation claim. (Dkt. 42 at p. 34). The Court finds it is insufficient.

The Fifth Circuit has found that a "time lapse of up to four months" may be sufficiently close to satisfy the third element of a retaliation claim with temporal evidence. *Evans v. Houston*, 246 F.3d 344, 354 (5th Cir. 2001). However, the Fifth Circuit has also found that a "five month lapse is not close enough without other evidence of retaliation." *Feist v. Louisiana*, 730 F.3d 450, 454 (5th Cir. 2013) (citing *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 472 (5th Cir. 2002). Further, after the Fifth Circuit found that a time lapse of four months may demonstrate causation, the Supreme Court "approvingly cited a case that held three months was insufficient to show causation." *Garcia*, 938 F.3d at 243; *see Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001). Emanuel's proffered time lapse of just over four months is insufficient to support causation—especially given the lack of other evidence. Accordingly, the Court finds that Emanuel has not created a genuine issue as to his *prima facie* case of retaliation, and such claim must be dismissed.

**D. Hostile Work Environment**

at p. 34) ("It took [NASA] approximately five (5) months to strip [Emanuel] of his security clearance").

The Court finds that no genuine issue exists as to Emanuel's hostile work environment claim based on race, age, or protected activity. To state a hostile work environment claim under Title VII, Emanuel must show that: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment affected a term, condition, or privilege of employment; and (5) his employer knew or should have known of the harassment and failed to take prompt remedial action. *See Eyob v. Mitsubishi Caterpillar Forklift Am. Inc.*, 745 Fed. Appx. 209, 215 n.2 (5th Cir. 2018). To establish the same under the ADEA, Emanuel must show: (1) he belongs to a protected group (at least 40 years old); (2) he was subjected to harassment based on his protected characteristic; (3) that the harassment affected a term, condition, or privilege of employment; and (4) that there exists some basis for liability on the part of the employer. *See Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011). Finally, to establish a retaliatory hostile environment claim,[3] Emanuel "must establish a *prima facie* case that: (1) [he] engaged in protected activity; (2) [he] was subjected to unwelcomed harassment; (3) there is a causal connection between the harassment and protected activity; (4) the harassment complained of affected a term,

[3] The Court follows the Western District of Texas in recognizing a retaliatory hostile work environment claim. *See Niemietz v. City of Converse*, Civil Action No. SA-17-CV-401-XR, 2017 U.S. Dist. LEXIS 202283, at *21 (W.D. Tex. Dec. 7, 2017) ("Although the Fifth Circuit has yet to expressly recognize a claim for retaliatory hostile work environment, this Court recognizes that the Fifth Circuit has not rejected other district courts recognizing such a claim, and that other Courts of Appeals have recognized this type of claim. Accordingly, this Court finds that Plaintiff can bring a claim for retaliatory hostile work environment.").

condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Niemietz*, Civil Action No. SA-17-CV-401-XR, 2017 U.S. Dist. LEXIS 202283, at *21. To establish each of these claims, Emanuel must demonstrate that the alleged harassment was based on a protected characteristic or activity. The Court finds that he has failed to do so.

Emanuel does not cite to the record in support of his hostile work environment claims. *See* (Dkt. 42 at pp. 36 – 38). Instead, Emanuel instructs the Court to look to NASA's motion for evidence of "sufficient incidents for a reasonable person to conclude that [Emanuel's] manager as a whole created a hostile work environment." *Id*. The Court finds nothing in the list of allegations that creates a genuine issue as to whether his alleged harassment was based on a protected characteristic—namely, his race, age, or protected activity. While Emanuel does explain in his deposition that he suffered "microaggression," the Court does not consider this conclusory assertion, absent further detail, sufficient to create a fact question. (Dkt. 34-1 at p. 22). Emanuel does not include the time, severity, or character of this "microaggression," nor does he provide a definition of the term in his briefing. *Id*.

There is no evidence proffered with this motion to suggest that an alleged harassment was based on a protected characteristic. As such, the Court finds that no genuine issue exists as to Emanuel's hostile work environment claims.

## IV. CONCLUSION

The Court finds that no genuine issue exists as to any of Emanuel's claims. Accordingly, NASA's Motion for Summary Judgment (Dkt. 34) is **GRANTED** and Emanuel's claims must be **DISMISSED WITH PREJUDICE**. Final judgment is to follow.

SIGNED at Houston, Texas on September 8, 2025.

George C. Hanks, Jr.
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE